# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00041-CR
## NO. 03-10-00042-CR

**Gerald Christopher Zuliani, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM COUNTY COURT AT LAW NO. 1 OF WILLIAMSON COUNTY
### NOS. 09-05342-1 & 09-07509-1, HONORABLE SUZANNE BROOKS, JUDGE PRESIDING

## O P I N I O N

Gerald Christopher Zuliani was charged with the offenses of reckless driving and deadly conduct. *See* Tex. Penal Code Ann. § 22.05 (West 2003); Tex. Transp. Code Ann. § 545.401 (West 1999). A jury found Zuliani guilty of both offenses, assessing punishment at 30 days' confinement and a $100 fine for the reckless-driving conviction and one year's confinement and a $3,000 fine for the deadly-conduct conviction. Because we conclude that Zuliani's two convictions represent multiple punishments for the same offense in violation of the prohibition against double jeopardy, we reverse and vacate the conviction for reckless driving. The conviction for deadly conduct is affirmed.

## BACKGROUND

The underlying prosecutions arose from a motor-vehicle collision that occurred on June 7, 2009, on Farm-to-Market Road 1431 (FM 1431) in Williamson County, Texas. William Andrews, an eye-witness to the collision, testified at trial that he was driving a motorcycle eastbound on FM 1431 when a maroon pick-up truck pulled up behind him at a traffic light. When the light turned green, the truck followed Andrews in a manner that he described as "uncomfortably close," before making an "aggressive" lane change in front of another vehicle. Andrews then observed a small blue car turn from a side street onto the right lane of eastbound FM 1431, in front of the maroon truck. Andrews testified that the driver of the maroon truck, later identified as Zuliani, began following closely behind the blue car, driven by Gretchen Gruber. When both Gruber and Zuliani moved their vehicles into the left lane simultaneously, Andrews observed Zuliani make "a very violent move back into the right lane," then accelerate to pull ahead of Gruber. At that point, Andrews testified, Zuliani "intentionally, angrily moved in front of [Gruber] and slammed on the brakes." When asked to clarify whether Zuliani merely tapped his brakes, Andrews stated, "No, no, no. . . . White smoke slammed on the brakes." Gruber then lost control of her vehicle and traveled across the right lane into a guardrail, before coming back into the left lane and hitting Zuliani's vehicle, sending both vehicles spinning.[1] When the vehicles came to rest, Andrews stopped to render aid.

---

[1] On redirect examination, Andrews clarified that he did not actually see Gruber's vehicle strike the guardrail, because he had taken his eyes off of the collision to look in his rearview mirror and confirm that it was safe for him to slow down. Andrews testified that he did observe Gruber's vehicle move across the right lane and then come back into the left lane, where it collided with Zuliani's vehicle.

Gruber also testified at trial, stating that at the time of the collision, she was driving slowly on FM 1431 in search of a home-improvement store when Zuliani drove up behind her and began following at a distance of approximately three feet from her vehicle. According to Gruber, Zuliani passed her in the right lane before cutting back in front of her, almost clipping the front end of her vehicle in the process. At that point, Zuliani slammed on his brakes, causing Gruber "to grab the wheel and just pull it over to the right" in order to avoid a rear-end collision. Gruber lost control of her vehicle, which then bounced off of a guardrail, struck Zuliani's vehicle, and ultimately came to rest perpendicular to the lanes of traffic. Gruber suffered a bruised big toe as a result of the incident, but no other injuries.

Cedar Park Police Officer Jason Moldenhour, who was dispatched to the scene of the crash, testified that when he interviewed Zuliani regarding the collision, Zuliani stated that he had "brake checked" Gruber. When asked on cross-examination whether Zuliani might have meant that he merely tapped the brakes to flash his brake lights as a warning to Gruber, Moldenhour stated that it was possible, but that he understood the term "brake check" to mean "you slam on your brakes." Moldenhour also testified that the physical evidence at the crash site, including damage to the vehicles and paint transfer on the guardrail, was consistent with Gruber's vehicle having struck the guardrail on the right before coming back and striking the back of Zuliani's vehicle, as testified to by Gruber and Andrews.

Virginia Johle, the passenger in Zuliani's vehicle at the time of the incident, also testified at trial. According to Johle, she and Zuliani were traveling in the left lane of FM 1431 when they came up behind Gruber's vehicle. Because Gruber was driving more slowly than the flow of

traffic, Zuliani passed her on the right, then moved back in front of her in the left lane. At that time, Gruber accelerated without warning, rear-ending Zuliani's vehicle. Johle stated that she felt the impact from a rear-end collision, then "a double impact to the right side of the vehicle," before the truck began to spin, ultimately coming to a stop alongside the guardrail. Johle testified that she did not remember Zuliani braking at all before the collision. She also stated that Zuliani is an overly cautious driver due to a back injury that would likely be aggravated in a car accident.

Edward Ingram, an accident reconstruction expert, testified for the defense. He testified that there were dents in the tailgate of Zuliani's vehicle that could not have occurred under the version of the facts testified to by Andrews and Gruber, as they appeared to have resulted from a rear-end collision. Officer Moldenhour also testified regarding the dents in the tailgate, stating that he did not believe they were caused by Gruber's vehicle because they were higher than Gruber's front bumper. Moldenhour further testified that the dents contained rust, which led him to believe that the damage had existed prior to the collision. Johle, however, testified that she was familiar with the vehicle, and that only a portion of the tailgate damage had existed prior to the collision.[2]

After hearing the evidence, the jury found Zuliani guilty of both reckless driving and deadly conduct, assessing punishment of 30 days' confinement and a $100 fine for reckless driving and one year's confinement and a $3,000 fine for deadly conduct.

---

[2] Johle explained that she and Zuliani were traveling to a job site at the time of the accident and that the vehicle driven by Zuliani belonged to their employer. The owner of the vehicle did not testify at trial.

4

On appeal, Zuliani argues that his convictions for reckless driving and deadly conduct violate the prohibition against double jeopardy. Zuliani also argues that the evidence is insufficient to support either conviction.

## DISCUSSION

*Double Jeopardy*

While Zuliani did not raise his double-jeopardy claim in the trial court, such a claim may be raised for the first time on appeal when the double-jeopardy violation is clearly apparent on the face of the record and no legitimate state interest is served by the enforcement of usual rules of procedural default. *See Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000). Because both of Zuliani's convictions arose from a single trial, any double-jeopardy violation should be apparent on the face of the record and no legitimate state interest would be served by requiring Zuliani to have first raised this issue in the trial court. *See Johnson v. State*, 208 S.W.3d 478, 510 (Tex. App.—Austin 2006, pet. ref'd). We will therefore address the merits of Zuliani's double-jeopardy claim.

The prohibition against double jeopardy protects an accused against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *See Evans v. State*, 299 S.W.3d 138, 140-41 (Tex. Crim. App. 2009); *see also* U.S. Const. amend. V; Tex. Const. art. 1, § 14. The present case, involving two convictions after a single trial, implicates only the third category of protection. When a defendant is subjected to multiple punishments for the same conduct, the remedy is to affirm the conviction for the most serious offense and vacate the other convictions. *Bigon v. State*,

5

252 S.W.3d 360, 372 (Tex. Crim. App. 2008). The most serious offense is ordinarily defined as the offense for which the greatest sentence was assessed. *Id.* at 373.

When the same conduct violates two different statutory provisions, the two offenses are the same for double-jeopardy purposes if one of the offenses contains all of the elements of the other. *Blockburger v. United States*, 284 U.S. 299, 304 (1932). The two offenses are separate and distinct if they each require "proof of a fact which the other does not." *Id.* Furthermore, "in Texas, when resolving whether two crimes are the same for double-jeopardy purposes, we focus on the elements alleged in the charging instrument," so that two offenses with differing statutory elements may be the same for double-jeopardy purposes if, as charged, they require proof of the same facts. *Bigon*, 252 S.W.3d at 370.

The statutory elements of deadly conduct are that the defendant recklessly engages in conduct that places another in imminent danger of serious bodily injury. *See* Tex. Penal Code Ann. § 22.05(a). The statutory elements of reckless driving are that the defendant drives a vehicle with willful or wanton disregard for the safety of persons or property. *See* Tex. Transp. Code Ann. § 545.401.[3] Based on the statutory language alone, each offense requires proof of an element that the other does not, as deadly conduct requires that a victim be placed in imminent danger of serious bodily injury, while reckless driving includes the element of driving a vehicle.

In determining whether a double-jeopardy violation has occurred, however, we must look beyond the statutory language to the elements as alleged in the charging instruments. *See*

---

[3] "Willful or wanton disregard" is substantially equivalent to a mental state of recklessness. *See Bartholomew v. State*, 871 S.W.2d 210, 214-15 (Tex. Crim. App. 1994) (Clinton, J., concurring).

6

*Bigon*, 252 S.W.3d at 370. Here, the charging instrument for the offense of deadly conduct states that on or about June 7, 2009, Zuliani did then and there "recklessly engage in conduct that placed Gretchen Gruber in imminent danger of serious bodily injury by cutting her vehicle off in traffic then slamming on his brakes, causing her vehicle to strike a guardrail." The charging instrument for the offense of reckless driving states that on or about June 7, 2009, Zuliani did then and there "drive a vehicle in a willful and wanton disregard for the safety of persons and property by cutting another vehicle off in traffic then slamming on his brakes, causing another vehicle to strike a guardrail." Based on the offenses as charged, a prosecution for reckless driving would not require proof of any fact that a prosecution for deadly conduct does not. While the deadly-conduct charging instrument does not specifically allege that Zuliani was driving, it does allege that he cut another vehicle off in traffic and slammed on his brakes, so that the element of driving is necessarily implied. *See Rice v. State*, __ S.W.3d __, No. PD-528-10, 2011 Tex. Crim. App. LEXIS 328, at *13 (Tex. Crim. App. Mar. 9, 2011) (stating that where indictment for aggravated assault included no explicit indication that appellant was driving, analysis of reckless driving as lesser-included offense depends on whether "the element of driving can be deduced from the charging instrument"). Because one of the offenses contains all of the elements of the other, Zuliani's convictions, if based on the same conduct, violate the prohibition on double jeopardy. *See Blockburger*, 284 U.S. at 304; *Bigon*, 252 S.W.3d at 370.

On appeal, the State takes the position that Zuliani's two convictions are based on two separate instances of conduct. When separate and distinct offenses occur during the same transaction, the protection against double jeopardy does not apply. *See Spradling v. State*, 773 S.W.2d 553, 556 (Tex. Crim. App. 1989). The State contends that the deadly-conduct

7

conviction relates to Zuliani's actions with respect to Gruber, while the reckless-driving charge is based, at least in part, on his actions in cutting off another vehicle.

Looking again to the charging instrument on reckless driving, it alleges that Zuliani drove recklessly by "cutting another vehicle off in traffic then slamming on his brakes, causing another vehicle to strike a guardrail."[4] The charging instrument does not specify a particular vehicle that Zuliani cut off in traffic or caused to strike a guardrail, referring only to "another vehicle" in each instance. The State concedes that Gruber's vehicle was the only vehicle to strike a guardrail as a result of Zuliani's conduct, but contends there was evidence that Zuliani cut off another vehicle before slamming on his brakes in front of Gruber. To determine whether the two prosecutions against Zuliani are based on separate instances of conduct, we look to the evidence presented at trial. *See Ex parte Goodbread*, 967 S.W.2d 859, 860 (Tex. Crim. App. 1998) ("[W]hen one cannot determine from the State's pleadings whether the offenses prosecuted are the same, the court must look to the proof offered at trial.").

Andrews testified that Zuliani's driving first caught his attention when Zuliani pulled up "uncomfortably close" behind him and continued to maintain an unsafe distance. Andrews did not testify that Zuliani ever cut him off personally, but he did testify to observing Zuliani change lanes in front of another vehicle. Andrews characterized this lane change as "aggressive," stating, "When [Zuliani] changed lanes there was less than a car length between he and I and there was less than a car length between the back of his vehicle and the vehicle that he had just passed." No other evidence was presented at trial regarding Zuliani having made an aggressive lane change in front of

---

[4] We note that the jury charge tracked the language of the charging instrument.

8

this other vehicle.[5]  The State did not argue or elicit testimony that Zuliani's lane change with less than a car's length of space constituted "cutting off" this particular vehicle, nor did it mention the incident at any other time over the course of the two-day trial.

There was a substantial amount of testimony, however, with respect to Zuliani's lane change in front of Gruber's vehicle.  Andrews testified that from his vantage point, it appeared "as though [Zuliani] was close enough to have clipped her," while Gruber testified that Zuliani "almost clipped" her vehicle in the process of changing lanes.  Moldenhour, in testifying about the results of his investigation of the incident, stated that Zuliani "moved in extremely close" to the front end of Gruber's vehicle.  When asked whether Zuliani's lane change in front of Gruber was "something we commonly call . . . cutting somebody off," Moldenhour responded in the affirmative.

During closing argument, neither party mentioned the lane change in front of the unidentified vehicle as testified to by Andrews.  Defense counsel in fact characterized the elements of the State's case in closing argument as being that "Zuliani committed the offenses of reckless driving and deadly conduct by cutting off Ms. Gruber as she's alleged[,] . . . causing her to veer out of the way and strike a guardrail," a statement that was not contradicted by the State.

Based on the evidence presented at trial, we conclude that Zuliani's convictions for reckless driving and deadly conduct were based on the same conduct—cutting off Gruber's vehicle and slamming on his brakes, causing her vehicle to strike a guardrail.  Because these convictions represent multiple punishments for the same offense, they violate the prohibition on double jeopardy.

---

[5]  While Moldenhour testified that his investigation revealed that Zuliani had driven "aggressively with the witness on the motorcycle," meaning Andrews, he did not testify to any aggressive driving with respect to the driver of the other unidentified vehicle.

*See Evans*, 299 S.W.3d at 140-41. The appropriate remedy is to affirm the conviction for which the greater sentence was assessed, that being the conviction for deadly conduct, and vacate the remaining conviction for reckless driving. *See Bigon*, 252 S.W.3d at 372. Zuliani's first issue on appeal is sustained, and his conviction for reckless driving is vacated and dismissed.

*Evidentiary Sufficiency*

In his second and third issues on appeal, Zuliani challenges the sufficiency of the evidence to support his convictions for deadly conduct and reckless driving. In light of our determination that the reckless-driving conviction must be dismissed, we will address Zuliani's evidentiary challenge only with respect to the conviction for deadly conduct. *See* Tex. R. App. P. 47.1.

In Zuliani's initial brief on appeal, he argued that the evidence was factually insufficient to support his conviction for deadly conduct. After Zuliani's brief was filed, however, the court of criminal appeals abolished factual-sufficiency review, holding that legal sufficiency is the only standard by which a reviewing court should determine whether the evidence is sufficient to support a conviction. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Zuliani then filed a reply brief, requesting that his factual-insufficiency argument be treated as a legal-insufficiency argument in light of *Brooks*. In response, the State argues that by raising only a factual-sufficiency challenge in his initial brief on appeal, Zuliani has waived any argument that the evidence is legally insufficient to support his conviction.

In *Brooks*, the court of criminal appeals concluded that the factual-sufficiency standard of reviewing the evidence to support a conviction had become "indistinguishable" from the

10

legal-sufficiency standard. *Id.* at 902. By extension, a challenge to the factual sufficiency of the evidence can fairly be considered "indistinguishable" from a legal-sufficiency challenge, as either challenge would necessarily trigger the same review. Thus, we will treat Zuliani's initial factual-sufficiency challenge as a legal-sufficiency challenge, given the determination by the court of criminal appeals that there is no meaningful distinction between the two. *See id.*

When reviewing the sufficiency of the evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks*, 323 S.W.3d at 899. This review requires us to defer to the jury's determinations of the witnesses' credibility and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899.

Here, the jury was presented with two versions of how the collision occurred. Gruber and Andrews testified that Zuliani cut Gruber off and slammed on his brakes, while Johle testified that Zuliani moved safely in front of Gruber and was driving at a normal speed when she suddenly accelerated and rear-ended him. The jury also heard Moldenhour's testimony regarding Zuliani's statement that he had "brake checked" Gruber. Whether that statement refers to slamming on the brakes or merely tapping the brakes as a warning, it is inconsistent with Johle's testimony that Zuliani did not apply the brakes at all prior to the collision. As the trier of fact, the jury was free to weigh the credibility of the witnesses and to resolve the conflicting testimony in favor of the State.

Moldenhour also testified that the physical damage to the vehicles was consistent with the sequence of events testified to by Gruber and Andrews. While Ingram testified that the dents in

11

the tailgate of Zuliani's vehicle appeared to have resulted from a direct rear-end collision, there was conflicting evidence as to whether those dents existed prior to the accident. Moldenhour testified to his belief that the dents had not been caused by Gruber's vehicle, due to the placement of the dents in comparison with Gruber's bumper and the fact that it appeared to be older damage, while Johle testified that certain dents were not present prior to the collision with Gruber's vehicle. Again, the jury was free to weigh the credibility of the witnesses and resolve this issue in favor of the State. Furthermore, as the State pointed out in closing argument, even if Gruber's vehicle did strike the tailgate of Zuliani's vehicle before hitting the guardrail, that series of events does not foreclose the possibility that the collision was caused by Zuliani slamming on the brakes in front of Gruber, as opposed to Gruber accelerating and intentionally rear-ending Zuliani.

With respect to the element of imminent danger of serious bodily injury, the jury heard testimony that Gruber's vehicle spun out of control across multiple lanes of traffic, striking both a guardrail and Zuliani's vehicle before coming to rest perpendicular to oncoming traffic. Andrews also testified that after witnessing the accident, he "was convinced" that serious bodily injury had resulted. Given the severity of the collision, the evidence was sufficient to support a finding that Zuliani's actions put Gruber in imminent danger of serious bodily injury.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found the essential elements of deadly conduct beyond a reasonable doubt. Zuliani's evidentiary challenge is overruled.

12

## CONCLUSION

We affirm the conviction for deadly conduct, and vacate and dismiss the conviction for reckless driving.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Henson and Goodwin

03-10-00041-CR          Vacated and Dismissed

03-10-00042-CR          Affirmed

Filed:   April 8, 2011

Publish

13